UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
TYRONE CURRY,

                  Plaintiff,

      -against-

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, NEW YORK CITY POLICE
OFFICER SMITH, NEW YORK CITY POLICE
SERGEANT JERRY WALSH, NEW YORK CITY
POLICE INSPECTOR DiPOLO, NEW YORK CITY
PROPERTY CLERK'S OFFICE, NEW YORK CITY
ENVIRONMENTAL CONTROL BOARD, NEW YORK
CITY ENVIRONMENTAL CONTROL BOARD JUDGE
JOEL TUCKER, NEW YORK CITY DEPARTMENT OF
FINANCE, and NEW YORK CITY DEPARTMENT OF
CONSUMER AFFAIRS,

                  Defendants.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**

10-CV-5847 (SLT) (LB)

**TOWNES, United States District Judge:**

On December 16, 2010, plaintiff Tyrone Curry, a street vendor, commenced this action against the City of New York; three of its agencies, the New York City Police Department (the "NYPD"), the New York City Environmental Control Board ("ECB") and the New York City Department of Finance ("DOF"); the "New York City Property Clerk's Office"; ECB Judge Joel Tucker and three NYPD employees: Inspector DiPolo, Sergeant Jerry Walsh and Officer Smith. Along with his complaint, plaintiff filed a request to proceed *in forma pauperis*, a proposed order directing defendants to show cause why certain injunctive relief should not be granted and a two-page affirmation in support of his request for injunctive relief. Plaintiff's application to proceed *in forma pauperis* is granted but, for the reasons stated below, plaintiff's application for a temporary restraining order ("TRO") and an order to show cause is denied without prejudice.



## BACKGROUND

These following facts are gleaned from plaintiff's twelve-page handwritten complaint, the truth of which is assumed solely for purposes of this Memorandum and Order. Plaintiff is a street vendor who works on the streets of New York City. On or before November 21, 2010, defendant Sergeant Jerry Walsh issued an ECB summons to "a vender [sic] who only sells items of a protect[ed] class nature, such as art, books, visual art, [and/or] music . . . created personally," but "refused to issue a property invoice" (Complaint at 5). Although plaintiff does not specifically identify the vendor, this Court will assume that plaintiff was the vendor and that Sgt. Walsh seized his wares. It is unclear where plaintiff was displaying his wares at the time they were confiscated, although plaintiff implies that he may have been on a public sidewalk on Fulton Street, somewhere between Court Street and Flatbush Avenue, in Brooklyn (*Id.* at 10).

Because Sgt. Walsh refused to issue plaintiff a property invoice as required under section 218.30 of the New York City Patrol Guide (*Id.* at 5), plaintiff apparently had to file a complaint of some sort on November 21, 2010, to learn the invoice number. However, when plaintiff attempted to locate his property using that invoice number, no record of that invoice number "could . . . be found in the system or log book" (*Id.* at 6). After filing additional complaints, plaintiff ascertained that his property had been invoiced under another number and succeeded in obtaining copies of the new invoice (*Id.* at 6).

On November 22, 2010, plaintiff appeared at the ECB Office at 233 Schermerhorn Street, Brooklyn, demanding a hearing which would enable him to recover his property. Although plaintiff believed that unspecified ECB rules guaranteed him a hearing that same day, defendant Judge Tucker refused to conduct one, then threatened to call security officers to remove him from

the building (*Id.* at 7). Plaintiff called "911" to file a complaint, then went to the ECB Office in Manhattan where he received a hearing that same day (*Id.*).

Although plaintiff's submissions include a copy of a decision and order issued by an ECB Judge in an unrelated case, plaintiff does not attach, or adequately describe, the decision in his case. One portion of the complaint implies that the ECB judge ruled in his favor, stating that the NYPD Property Clerk "is demanding proof of payment for return of [the] property," even though the invoice itself provides for release of property upon presentment of an "order/decision" (*Id.* at 8). Another portion of the complaint, however, suggests that plaintiff may have been found to have violated "a street restriction" (*id.* at 8), and ordered to pay a fine.

It is also unclear whether plaintiff ever paid a fine. As noted above, plaintiff complains that the NYPD Property Clerk is improperly "demanding proof of payment for return of [the] property" (*id.*), implying that no payment was owed. However, other portions of the complaint suggest that a "payment receipt" was issued to plaintiff by the DOF, but that this receipt incorrectly indicated that plaintiff was satisfying a "sanitation fine[]" (*Id.* at 8, 11).

### *Plaintiff's Submissions*

Plaintiff's complaint does not articulate a basis for jurisdiction. However, by citing to *Bery v. City of New York* and *Lederman v. City of New York* – cases in which artists and "expressive-matter vendors" have challenged New York City Rules and Regulations on First Amendment grounds – the complaint suggests that plaintiff is principally asserting that defendants' actions violated his First Amendment rights. The complaint appears to seek both declaratory relief in the form of an order declaring that he and his fellow vendors have a "constitutional right to sell protected class items on the sidewalks" of New York City (*id.* at 9),

3

and injunctive relief, prohibiting the NYPD from issuing "ECB summonses" to plaintiff and his fellow vendors, prohibiting the ECB from "holding illegal hearings" regarding these summonses; preventing the DOF from collecting fines assessed at these hearings, and directing the NYPD Property Clerk to return the seized property (*id.* at 9-12).

Plaintiff's two-page affirmation in support of his application for a TRO requests injunctive relief that differs from and exceeds what is requested in the complaint. The affirmation not only requests that the NYPD and its employees be enjoined from issuing ECB summonses to "venders [*sic*] who sell protected class items" and seizing the vendors' wares, but also seeks to enjoin these defendants from "arresting venders [*sic*] that sell protect[ed] class items" (Plaintiff's Affirmation dated Dec. 16, 2010, at 1-2). In addition, the affirmation seeks a mandatory injunction directing Sergeant Walsh and other NYPD officers to follow certain procedures set forth in 218.30 of the NYPD Patrol Guide (*Id.*)

Aside from listing the relief requested, however, plaintiff's affirmation offers few facts to support plaintiff's requests. Plaintiff's affirmation states that his "co-workers and teammates have also be[en] issued illegal ECB summons[es], criminal court summons[es]," and have been arrested, but that the cases against them have been dismissed (*Id.* at 2). In addition, the affirmation states:

> Unless this order is issued, I will suffer immediate and irreparable injury, loss and damages in that
>
> 1. I may be illegally arrested again
>
> 2. I may be subject to having my property removed again illegally

(*Id.*). However, neither plaintiff's affirmation nor his complaint indicate that plaintiff has ever been arrested.

## *DISCUSSION*

"[A] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990); *D.D. v. New York City Bd. of Educ.*, CV-03-2489 (DGT), 2004 WL 633222, at *23 (E.D.N.Y. Mar. 30, 2004). To obtain either a temporary restraining order or a preliminary injunction, the moving party must show "that 1) absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999). In addition, where the moving party requests a mandatory – as opposed to a prohibitory – injunction against the government, the moving party must show a "clear" or "substantial" likelihood of success on the merits. *No Spray Coalition, Inc. v. City of New York*, 252 F.3d 148, 150 (2d Cir.2001) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir.1999)).

"The showing of irreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction.' and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Brown v. Giuliani*, 158 F.R.D. 251, 264 (E.D.N.Y. 1994)(quoting *Bell & Howell v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983)). The law in this Circuit requires that irreparable harm be likely, not merely possible. *Weiss v. Torpey*, 987 F.Supp. 212, 216 (E.D.N.Y. 1997); *Mason Tenders Local Union 59 v.*

*Laborers' Int'l Union of North America*, 924 F.Supp. 528, 542 (S.D.N.Y.), *aff'd*, 101 F.3d 686 (2d Cir. 1996)). Moreover, "[i]rreparable harm must be shown to be imminent, not remote or speculative . . . ." *Brown*, 158 F.R.D. at 264 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)). Thus, "[p]laintiffs seeking injunctive relief must establish . . . 'real and immediate threat of repeated injury' demonstrated by more than 'past exposure to illegal conduct.'" *Roe v. City of New York*, 151 F.Supp.2d 495, 501-02 (S.D.N.Y.2001). "In other words, plaintiffs asserting an injunction . . . must allege the probability of a future encounter with the defendant which is likely to lead to a similar violation of some protected right." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983).

Plaintiff's affirmation in this case does not make the showing necessary for injunctive relief. First, plaintiff does not allege imminent, irreparable harm. In his affirmation, plaintiff speculates that he "may be illegally arrested," and "may be subject" to having his property illegally seized. Plaintiff's Affirmation at 2. The factual basis for the first of these assertions is unclear, since plaintiff does not even allege in his complaint that he has been arrested previously. Furthermore, even if plaintiff were to establish that he had been arrested and that his wares had been seized on a prior occasion, this showing would be insufficient to establish a "real and immediate threat" of these events recurring. *Roe*, 151 F.Supp.2d at 501-02.

Moreover, plaintiff has not even alleged, much less established, facts sufficient to show that his First Amendment rights have been violated. In *Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996), the Second Circuit ruled that New York City Administrative Code § 20-453, which required street vendors to be licensed, violated the First Amendment rights of persons seeking to sell their artwork in public spaces. *Id.* at 698. In the wake of this ruling, the *Bery*

defendants, including the City, the Department of Consumer Affairs, and the Police Department, consented to entry of a permanent injunction prohibiting them "from enforcing Administrative Code § 20-453 [the general vendor licensing requirement] against any person who hawks, peddles, sells, leases or offers to sell or lease, at retail, any paintings, photographs, prints and/or sculpture, either exclusively or in conjunction with newspapers, periodicals, books, pamphlets, or other similar written matter, in a public space." See Bery, No. 94 Civ. 4253 (MGC), Premanent Injunction on Consent, dated Oct. 30, 1997, at 2 (the "Bery Injunction").

The Second Circuit has interpreted this injunction "according to the general interpretive principles of contract law," deferring "to the plain meaning of the language . . . and the normal usage of the terms selected." Mastrovincenzo v. City of New York, 435 F.3d 78, 103 (2d Cir. 2006). Thus, the injunction does not extend to cover all items that may properly be considered "expressive merchandise." See id. For example, Mastrovincenzo held that "the term 'paintings' as used in the Bery [I]njunction does not include baseball caps, jackets, and other articles of clothing that have been artistically decorated with paints and markers," but "only and specifically . . . painted canvases." Id. at 103-04.

In this case, there is no evidence as to what plaintiff sells. Even assuming that plaintiff is the vendor mentioned on page 5 of the complaint, to whom Walsh issued an ECB summons, plaintiff's complaint alleges only that plaintiff "sells items of a protect[ed] class nature, such as art, books, visual art, [and/or] music . . . created personally" (Complaint at 5). Even if this allegation were repeated in a sworn affirmation or affidavit, it would be too conclusory and vague to permit this Court to find that plaintiff fits within the Bery Injunction.

Furthermore, even though "expressive-matter" vendors may not need a license to sell their wares, they are still subject to time, place and manner restrictions of the General Vendors

7

Laws. *See Lederman v. New York City Dept. of Parks & Recreation*, Nos. 10 Civ. 4800 & 5185, 2010 WL 2813789, at *7 (S.D.N.Y. July 16, 2010). These regulations specify, *inter alia,* that vendors may not (1) operate on sidewalks less than twelve feet wide, (2) occupy more than eight linear feet parallel to a curb, (3) display their wares within twenty feet of an entrance to any "place of public assembly," (4) occupy a bus or taxi stand, or (5) obstruct subway access. *See* N.Y.C. Admin. Code § 20-452(b). That portion of plaintiff's complaint which suggests that the ECB found that plaintiff violated "a street restriction" and ordered him to pay a fine, Complaint at 8, implies that plaintiff may have violated one of these time, place, and manner restrictions. Therefore, even if plaintiff could establish that he fits within the *Bery* Injunction, this Court could not grant the broad injunctive relief requested by plaintiff.

## CONCLUSION

For the reasons stated above, plaintiff's application for a temporary restraining order and an order to show cause is denied without prejudice. Plaintiff may renew his request, but must provide an affidavit or affirmation attesting to specific facts showing irreparable harm and a likelihood of success on his First Amendment claims.

SO ORDERED.

/s/ *Theo*
SANDRA L. TOWNES
United States District Judge

Dated: December 20, 2010
    Brooklyn, New York